NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| OSSERRITTA ROBINSON, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 06-5702 (SRC) |
|  | : OPINION |
| MICHAEL CHERTOFF, Secretary of Homeland Security, et al., | : |
| Defendants. | : |

**CHESLER, District Judge**

This case arises out of the United States Citizenship and Immigration Service's ("USCIS") denial of an immediate relative visa petition because the petitioner's husband died while the petition was pending. The Defendants, Michael Chertoff, the Secretary of Homeland Security and Emilio Gonzalez, the Director of the USCIS have moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) [docket #10]. The Plaintiff, Osserritta Robinson, has filed a cross motion for summary judgment under Rule 56 [docket # 16]. Pursuant to Federal Rule of Civil Procedure 78, the Court decides the motions on the papers submitted.

I.      FACTUAL AND PROCEDURAL BACKGROUND

On February 13, 2003, Plaintiff Osserritta Robinson ("Mrs. Robinson"), a citizen and national of Jamaica, married Louis A. Robinson ("Mr. Robinson"), a citizen of the United States.

Mrs. Robinson was admitted to the United States as a non-immigrant visitor for pleasure on a B-2 visa.  In March of 2003, Mr. Robinson filed a petition for his wife to obtain an immigrant visa as an "immediate relative"[1] (an I-130 petition) and an application to adjust his wife's status to that of a permanent resident alien (an I-485 application).  On October 15, 2003, Mr. Robinson was tragically killed in a Staten Island Ferry accident.  The USCIS then denied Mrs. Robinson's I-130 petition.  Mrs. Robinson, the USCIS decided, was no longer a spouse under the applicable statutory provisions because Mr. Robinson's untimely death occurred before the Robinsons had completed two years of marriage.  Mrs. Robinson's I-485 application was also denied because the denial of her visa petition made her ineligible for an adjustment of status.  *See* 8 U.S.C. 1255(a)(2).

Mrs. Robinson then instituted the present action, naming as Defendants Michael Chertoff, the Secretary of Homeland Security and Emilio Gonzalez, the Director of the USCIS ("Defendants").  The Complaint asks the Court to order the USCIS to reopen her I-130 and I-485 applications and to consider Mrs. Robinson an immediate relative of a United States citizen for the purposes of adjudicating those applications.  The Complaint also asks the Court to enjoin the USCIS from using the death of Mr. Robinson as a discretionary factor in adjudicating Mrs. Robinson's I-485 application.  Finally, Mrs. Robinson requests costs and attorney's fees.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and the Administrative Procedure Act ("APA") to review Mrs. Robinson's legal eligibility for an immediate relative visa.  *See* 5 U.S.C. § 704; *Pinho v. Gonzales*, 432 F.3d 193 (3d Cir. 2005).

---

[1] An immediate relative is a child, spouse, or parent of a citizen of the United States.  8 U.S.C. § 1151(b)(2)(A)(i).

Defendants have moved to dismiss Mrs. Robinson's Complaint under Federal Rule of Civil Procedure 12(b)(6). They argue that the decision to deny Mrs. Robinson's I-130 application is a based on a permissible interpretation of 8 U.S.C. § 1151 and is therefore entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Mrs. Robinson filed a cross-motion for summary judgment under Rule 56. Pursuant to Federal Rule of Civil Procedure 78, the Court decides the motions on the papers submitted.

## II.     STANDARD FOR A MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). In evaluating a Rule 12(b)(6) motion, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Zynn v. O'Donnell*, 688 F.2d 940, 941 (3d Cir. 1982).

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Orson, Inc. v. Miramax*

*Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Penn. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

On the motions currently before the Court, Defendants do not contest Mrs. Robinson's factual allegations. Rather, the question before the Court is whether the decision of the USCIS to terminate Mrs. Robinson's I-130 petition upon her husband's death was based upon a permissible interpretation of the relevant statute. Therefore, the same standard applies to both motions because no facts are in dispute and the issue that the Court must resolve is purely a matter of law. Specifically, the Court must determined if the undisputed facts alleges by Mrs. Robinson make her an "immediate relative" of the a citizen of the United States for the purposes of obtaining an immediate relative visa.

**III.   DISCUSSION**

This case hinges on whether Mrs. Robinson qualifies as an "immediate relative" of a citizen of the United States under 8 U.S.C. § 1151(b)(2)(A)(i). If, and only if, Mrs. Robinson is an "immediate relative" of a citizen of the United States is she eligible for an I-130 visa. The relevant portion of § 1151(b)(2)(A)(i) provides that:

> [T]he term "immediate relatives" means the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age. In the case of an alien who was the spouse of a citizen of the

4

>United States for at least 2 years at the time of the citizen's death and was not legally separated from the citizen at the time of the citizen's death, the alien (and each child of the alien) shall be considered, for purposes of this subsection, to remain an immediate relative after the date of the citizen's death but only if the spouse files a petition under section 1154(a)(1)(A)(ii) of this title within 2 years after such date and only until the date the spouse remarries.

Defendants argue that the first sentence of § 1151(b)(2)(A)(i) includes only married couples where both the alien and the citizen are living at the time the I-130 petition is adjudicated. That is not the situation here as Mr. Robinson died while the petition was pending. Defendants further argue that the second sentence controls any situation in which the citizen spouse has died prior to adjudication. Therefore, Defendants argue that the statute requires that the alien and the citizen spouse be married for at least two years in order for a widow or widower to be considered an immediate relative. Thus, under Defendants' interpretation, the dispositive question is whether the surviving alien spouse and the deceased citizen spouse have been married for at least two years before the citizen's death. Mrs. Robinson's claim would fail under this standard as she was married to Mr. Robinson for only eight months.

Plaintiff contends that the second sentence governs only those cases where the surviving alien spouse applies for a visa *after* the citizen spouse has died. Plaintiff further argues that if the citizen spouse is alive at the time of filing then the surviving alien spouse remains an immediate relative under the definition in the first sentence of § 1151(b)(2)(A)(i). According to this position, the dispositive question is whether the citizen spouse is still living at the time the application is filed. If the citizen spouse is alive at the time of filing, then the alien spouse is an immediate relative. If the citizen spouse is not alive at the time of filing only then does the two year marriage requirement apply. Because Mr. Robinson was still alive at the time that Mrs.

Robinson's I-130 petition was filed, Mrs. Robinson would be considered an immediate relative under this interpretation.

Mrs. Robinson relies on the opinion of the Ninth Circuit in *Freeman v. Gonzales*, 444 F.3d 1031 (9th Cir. 2006). The Ninth Circuit reasoned that the first sentence imposes only one limitation on any of the listed relationships, which only applies to parents:

> The language of the first sentence of § 1151(b)(2)(A)(i), which sets out the general definition of immediate relative, is straightforward and succinct, and expressly includes "spouses." Only alien "parents" are subject to any limitation, with the grant of immediate relative status being restricted to those whose citizen child is at least 21 years of age. There is no comparable qualifier to be a "spouse"--that is, a requirement that the marriage must have existed for at least two years.

*Id*. at 1039. The second sentences, therefore, extends the definition of an immediate relative by granting a "separate right of an alien widow to self-petition." *Id*. Under this interpretation, immediate relative status vests at the time of filing. Any of the relations listed in § 1151(b)(2)(A)(i) are sufficient to establish immediate relative status if they exist at that time. But in the case where the citizen relative dies before a petition is filed, no immediate relative status exists. The second sentence, then, expands immediate relative status to one specific instance where the filing postdates the citizen's death: where a surviving spouse had been married to the citizen for at least two years.

Defendants cite two district court cases from other jurisdictions, *Burger v. McElroy*, 97 Civ. 8775 (RPP), 1999 U.S. Dist. LEXIS 4854 (S.D.N.Y. Apr. 12, 1999) and *Turek v. Dep't of Homeland Security*, 450 F. Supp. 2d 736 (E.D. Mich. 2006). In *Burger* the Government argued, as they do here, that they could not approve an I-130 petition because 8 U.S.C. § 1554(b) provides that a petition shall be approved only if the Attorney General "determines that the facts stated in the petition are true." Because the statute is phrased in the present tense, the court in

*Burger* determined that the government permissibly construed the statute when it determined that, because the citizen spouse had died while the application was pending, it was no longer true that the surviving widow was a spouse. Therefore, the court determined that the Government's interpretation of the statute was entitled to deference under *Chevron*. *Burger*, 1999 U.S. Dist. LEXIS 4854 at * 17 (citing *Chevron*, 467 U.S. at 842-43).[2]

      The Court finds this reasoning unpersuasive. It is true that § 1554(b) requires immigration officials to verify the accuracy of the information contained in the petition. That the statute is written in the present tense is not particularly significant. The Court declines to stretch the language of § 1554(b) to the point where agency inaction may disqualify an applicant simply because the passage of time renders obsolete information that was true and accurate at the time the I-130 petition was filed. Rather, the Court is convinced that the Ninth Circuit's interpretation of the statute is correct. The Court finds that the statute differentiates between an alien who waits to file a petition until after the citizen spouse is deceased and one who files an I-130 shortly after marriage. In the first case, the alien spouse could have petitioned for an immediate relative visa when the marriage first occurred but did not. In the second case, however, the alien has done everything she could do to ensure the issuance an immediate relative visa. She has fully complied with the applicable regulations and has acted swiftly to attain permanent residence in the United States. The fortuity of the citizen spouse's untimely death is too arbitrary and random a circumstance to serve as a basis for denying the petition.

---

    [2] *Turek* is distinguishable from the present case because there the court noted that the timing of the plaintiff's marriage raised a presumption that the marriage was not entered into in good faith. *See* 8 U.S.C. § 1154(g); 8 C.F.R. § 204.2(a)(1)(iii). Because the alien in *Turek* was in removal proceedings, he had the burden of establishing by clear and convincing evidence that his marriage was made in good faith, which he could not do. 2006 U.S. Dist. LEXIS at * 9-10. Here, however, there has been no allegation that the Robinsons' marriage was not in good faith.

There are two ways to interpret the statute. Either the time of filing controls or the time of the citizens death controls. Under the Ninth Circuit's decision in *Freeman*, the petitioner's volitional act in promptly filing the I-130 petition ensures that the alien is considered an immediate relative under the statute. The alternative, urged by Defendants, is that the timing of the citizen spouse's death--i.e. whether it occurred before or after two years of marriage--governs. This interpretation yields strange results. A prompt adjudication of the I-130 petition (before the citizen dies) will result in an approval. A delay in adjudication (until after the citizen dies) will result in a denial. But a severe delay of two years or more, followed by the citizen's death, will also result in an approval. The Court cannot imagine that Congress intended the time of death combined with the pace of adjudication, rather than the petitioner's conscious decision to promptly file an I-130 petition, to be the proper basis for determinating whether the alien qualifies as an immediate relative.

The Court's conclusion is buttressed by the government's own procedures, which allow widows and widowers of deceased citizen spouses to file a separate visa petition (an I-360 petition). This is a further indication that the second sentence of § 1151(b)(2)(A)(i) confers an additional right on certain surviving spouses--it does not otherwise limit the definition of an immediate relative contained in the first sentence. *See Freeman*, 1041-42 & nn.15-17. Accordingly, the Court also agrees with the Ninth Circuit that Defendants are not entitled to deference under *Chevron*. *Id*. at 1039 ("Congress clearly intended an alien widow whose citizen spouse has filed the necessary forms *to be* and *to remain* an immediate relative (spouse) for purposes of § 1151(b)(2)(A)(i), even if the citizen spouse dies within two years of the

marriage").[3]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED** and Plaintiff's motion for summary judgment is **GRANTED**. Defendants are ordered to process Plaintiff's I-130 petition and I-485 application, and, throughout the application process, to consider Plaintiff an immediate relative of a citizen of the United States. Plaintiff's request for injunctive relief limiting the discretion the USCIS in adjudicating her I-485 application is **DENIED**. That question has not been briefed and is not properly before the Court. Finally, Plaintiff's request for costs and attorney's fees is **DENIED**, because Plaintiff does not assert a basis for their award under these circumstances. An appropriate order will be filed herewith.

                                                            s/ Stanley R. Chesler
                                           Stanley R. Chesler, U.S.D.J.

Date: May 14, 2007

---

[3] The Court notes that if Mrs. Robinson had been granted an immediate relative visa before Mr. Robinson had died, and before the final adjudication of her adjustment of status application, her I-130 petition would be subject to automatic revocation and possible reinstatement under 8 C.F.R. § 205.1(a)(3)(i)(C)(2). Plaintiff argues that it is arbitrary and inconsistent to permit pre-death approvals to be reinstated while preempting wholesale post-death approvals. Plaintiff further suggests that the regulation may be *ultra vires* because the statute requires "good and sufficient cause" to revoke a petition. *See* 8 U.S.C. § 1155. Nonetheless, this issue is not properly before the court. Since no petition has been approved in this case, there necessarily cannot be a revocation or a reinstatement.